17734

STATE, Respondent, v. Walter James OUTEN, Appellant
(118 S. E. (2d) 175)

*Sidney D. Duncan, Esq.,* of Columbia, *for Appellant,*

*Messrs. T. P. Taylor, Solicitor,* and *John W. Foard, Jr., Assistant Solicitor,* of Columbia, *for Respondent,*

January 11, 1961.

Moss, Justice.

Walter James Outen, the appellant herein, a Negro man twenty-nine years of age, was convicted of rape and sentenced to death. Sections 16-71, 16-72, of the 1952 Code of Laws of South Carolina.

The evidence for the State was that the prosecutrix, a white married woman, was a waitress in a restaurant in the City of Columbia and resided several miles north of the City near the Town of Dentsville. On November 11, 1959, after the prosecutrix had finished her days work as a waitress, she caught a bus at 10:15 p. m. to go home. She got off the bus some distance from her home in a rather isolated area. She waited until the bus went on by and then crossed the road to walk in the direction of her home. The appellant, emerging from some bushes at the side of the road, grabbed the pro-

secutrix from behind as she was attempting to run. She testi-fied that he jumped on her back and threw her to the ground, having his hand over her mouth, and exhibited to her a knife. She says that the appellant asked her to go over in the bushes with him and that in response to this she told him to let her get up and she would. When he released her she attempted to escape and it was then that the appellant grabbed her and dragged her into a clump of bushes. She testified that the appellant held a knife on her and told her he was going to stick it in her if she attempted to escape again. After the appellant had dragged the prosecutrix into the bushes, he made known to her his intention to have sex relations with her, and "I told him that he couldn't mean that, and he said, 'Why? Because you are a white woman and I am a colored man,' and I told him that was one of the reasons and that 'I just don't do things like that,' and he told me that I was going to have to." She further testified that "he wanted me to kiss him like he was a white man" and he promised her "If I would kiss him, he would let me go, so I had to." She further testified that the appellant re-fused to let her go and she had to give in because he had the knife at her throat. She also testified that the appellant had sexual intercourse with her against her will. The prosecutrix testified that she was with the appellant about one hour and fifteen minutes and was allowed to leave upon the promise that she would not tell of the occurrence. When she arrived home, the officers were summoned and a complete descrip-tion of the appellant was given. She described the appellant as wearing khaki pants, navy blue shirt, a jungle hat and that he was bare footed. The officers, within a short time after the report was made, tracked foot prints from the scene of the crime to the home of the appellant, where he was arrested and taken to headquarters. The prosecutrix there identified the appellant in two different police line-ups of colored men.

After the appellant had been identified by the prosecutrix, he was then questioned in the presence of the Sheriff and

two Deputy Sheriffs of Richland County, and a Negro policeman of the City of Columbia Police Department. The statement of the appellant was reduced to writing, a portion of which is in question and answer form. In the confession the appellant gave a detailed account of his raping the prosecutrix. In the confession he admitted that he did not have on any shoes, having left them at home to keep his wife from knowing that he was going out. He admitted also that he was wearing a tan tropical hard canvas cap, khaki pants and a blue shirt. All of the officers testified that the confession of the appellant was freely and voluntarily given.

It appears from the record that on November 12, 1959, that the family physician of the prosecutrix examined her. He testified that there were scratches on the right side of her neck under the jaw, one to one and one-half inches in length, the right elbow was sore and tender, with a one-half inch square abraded area, and there were scratches on the right little finger. There were scratches to the left of the mouth and to the right of the nose, and there were abraded areas on both knees. There were three or four blue spots and an abraded area between the right knee and hip. There were scratches on both ankles and a hematoma about one inch square on the left leg. Her neck was marked and sore. There was generalized pelvic tenderness, especially on the right lower quadrant, with abraded areas on the right upper abdomen and over right hip. A hematoma was noted on the labia minora on the right side. This physician testified that when he saw the prosecutrix she was tense and agitated. The appellant asserts the Court erred in allowing the physician to testify relative to the condition of the prosecutrix because such testimony did not point to the commission of a crime. A review of the record does not show any proper objection by the appellant to the testimony of the physician, except objection was made to the form of one question propounded to the physician by the Solicitor. This objection was sustained by the trial Judge and the question was properly reformed and answered. We

think the testimony of the condition of the prosecutrix was properly admitted. Evidence of the physical and mental condition, and the appearance or demeanor of the prosecutrix after the alleged offense, is admissible. 75 C. J. S., Rape, § 57b, at page 530. It has also been held that on prosecution for rape it is competent to prove the physical condition of the prosecutrix immediately after the outrage, as tending to prove the commission of the offense. 44 Am. Jur., Rape, Section 73, at page 944. In *State v. Wagstaff*, 202 S. C. 443, 25 S. E. (2d) 484, this Court held that in prosecution for statutory rape, permitting the father of the prosecutrix to testify regarding her physical condition on her return to her home, on the day involved, was not error. We do not think the testimony of the physician was too remote, since it appears that his examination of the prosecutrix was conducted within a few hours after the alleged rape. In the case of *Allford v. State,* 31 Ala. App. 62, 12 So. (2d) 404, it was held that a physician was properly permitted to testify as to bruises appearing on the body of the prosecutrix when examined five days after the alleged offense. In addition to what we have said, we point out that the admission or rejection of proffered testimony is largely within the sound discretion of the trial Judge and his exercise of such will not be disturbed by this Court on appeal unless it can be shown that there has been an abuse of discretion, a commission of legal error in its exercise, and the rights of the appellant have been thereby prejudiced. *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532. This exception is overruled.

The appellant imputes error to the trial Judge in permitting the Solicitor to propound certain questions which he contends were leading. He points to six instances from the record. In considering this exception we must keep in mind that it is well setled that where an objection is made to a question on the ground that it is leading, a wide discretion is vested in the trial Judge and his ruling thereon will not be disturbed in the absence of abuse of discretion. *State v. Lyles,* 210 S. C. 87, 41 S. E. (2d)

625, and *State v. Murphy,* 216 S. C. 44, 56 S. E. (2d) 736, 737 where it was said:

"We find no basis for appellant's second question. The trial Judge sustained her objections to the leading questions asked by the Solicitor and/or counsel assisting him. If opposing counsel persist in asking leading questions, although ruled out, then the aggrieved party, if he considers his cause injured thereby, should move for a mistrial. We do not find in this record where there was sufficient cause to invoke such a remedy. While on this subject, we desire to again state that it is seldom that the prefacing of a question by the phrase 'whether or not' relating to a material matter, removes it from the inhibited class of a leading question; and invite attention to the opinion of this Court authored by Mr. Justice Stukes in *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842."

In the light of the foregoing decisions, we have examined the record in this case and the instances where the appellant charges the trial Judge with error. On four of the occasions to which appellant alleges error, the trial Judge sustained the objection made. The trial Judge, in another instance, without objection being made by the appellant, and on his own motion, sustained an objection to a question propounded by the Solicitor, and instructed the jury to disregard the question as asked, but he permitted an answer to the question when it was properly reformed. An examination of the record of the other instance, to which appellant directs our attention, shows that no objection was made by him nor was the question leading. We find no abuse of discretion on the part of the trial Judge in his rulings in this connection. If the appellant felt that he had been prejudiced by the Solicitor asking leading questions, even though objection thereto had been sustained, then he should have moved for a mistrial upon such ground. The record shows that no such motion was made. This exception is overruled.

The appellant charges that the trial Judge committed error in failing to grant a new trial on the ground that he was held in custody an unreasonable and abnormal length of time prior to being charged with the commission of a crime. The record shows that the appellant was arrested on November 12, 1959. He does not contend that his actual arrest was illegal. It is his contention that the failure on the part of the arresting officers to take him before a Magistrate or Judge to be dealt with according to law, made his detention illegal. A review of the appeal record does not show that this question was raised upon the trial of the case. If the appellant conceived that any prejudice had resulted to him by reason of his detention without being formally charged with the crime of rape before a Magistrate, this question should have been raised by proper objection or motion during the trial. We have held that where a party has the option to object or not as he sees fit, the failure to exercise the option when the opportunity therefor presents itself must, in fairness to the Court and to the adverse party, be held either to constitute a waiver of the right to object, or to raise an estoppel against the subsequent exercise thereof. We have also held that a party may not reserve vices in his trial, of which he has notice as here, taking his chances of a favorable verdict, and in case of disappointment, use the error to obtain a new trial. *State v. Burnett,* 226 S. C. 421, 85 S. E. (2d) 744. In a case other than one involving capital punishment, this would suffice to dismiss the question, but in a capital case, and under the applicable rule of *in favorem vitae,* the record is searched for prejudicial error, whether or not it was the subject of appropriate request, objection or motion in the trial Court. We have carefully examined the record in this case and find nothing to support the contention of the appellant that he should have a new trial because he was held in custody for an unreasonable length of time prior to being charged with the commission of the crime of rape. There is an absence in the record of any affirmative statement supporting the contention of the appellant. This exception is overruled.

The appellant charges the trial Judge with error in restricting his counsel in the examination of witnesses as to the character of the appellant. A witness in behalf of the appellant testified that he had known him for a number of years. He said that the appellant had worked on his farm, performing usual farm labor. He testified to the good reputation of the appellant. The record then shows that the following took place:

"Q. Is there anything else about his family situation and surroundings that you can enlighten us about?

"The Court: Now, that probably would be too general, Mr. Monteith. I would have to sustain the State's objection to that part of it.

"Mr. W. S. Monteith: In addition to working at the chicken yard, and helping take care of property, did he or did he not work and help members of your family at times?

"The Witness: Yes, sir.

"Mr. Foard: If your Honor pleases, working with members of his family—I don't think he should go into a lot of details about working with members of his family. I don't see what bearing that has on this case. He says he was employed over there by him, and later by Executors of the Estate, and later they hired him back.

"The Court: What is the relevancy of that, Mr. Monteith?

"Mr. W. S. Monteith: I frankly don't see what it hurts. This is a man on trial for his life. It's a capital offense case, and I think this jury is entitled to know all about him, regardless of any technicalities the Solicitor might keep wanting to inject into the case.

"Mr. Foard: Your Honor, now that borders on a little talk to the jury.

"The Court: Well, I will take the answer. You may answer the question.

"The Witness: Yes, sir, he worked in the house. He helped my mother do some painting, and he would work

around the yard and do her yard work late in the afternoon after he got through with the chickens. As a matter of fact."

The Court permitted this witness to detail the work the appellant had done for him and also to testify that the appellant helped take care of the witness's father-in-law. We do not think that the trial Judge limited or restricted the appellant in proof of his general reputation.

In *State v. Merriman,* 34 S. C. 16, 12 S. E. 619, 627, this Court said:

"* * * There can be no doubt that when a witness is put upon the stand to attack or defend character he can only be asked, on the examination in chief, as to the general character of the person whose character is in question, and he will not be permitted to testify to particular facts, either favorable or unfavorable, to such person; but when the witness is subjected to cross examination he may then be asked, with a view to test the value of his testimony, as to particular facts. In the eye of the law the character of a person is to be ascertained by an inquiry as to what is generally said and thought of him in the community where he resides. Hence, when a witness has testified on his examination in chief that the person as to whose character the inquiry is instituted bears a good character, his opinion and the value of it may be tested by asking the witness on his cross examination whether he has ever heard that the person whose character is in question has been accused of doing acts wholly inconsistent with the character which he has attributed to him. This, according to our experience, has always been allowed on a cross examination, without question. * * *"

In *State v. Logue,* 204 S. C. 171, 28 S. E. (2d) 788, 791, it is stated:

"This court has consistently adhered to the rule that the inquiry as to a defendant's reputation is to be limited to two questions; first, whether the witness knows that reputation; secondly, whether that reputation be good or bad. This rule,

of course, applies to defendant's witnesses on direct examination. * * *"

A review of the record shows that counsel for the appellant was permitted not only to prove his good reputation but to give specific testimony as to his work record and his relationship to the family of the witness.

Another witness for the appellant was asked:

"Q. Are you or are you not then, familiar with his general reputation as to his character? A. Yes, sir, I am.

"Q. And knowing that, what was that reputation? A. I would consider it, Mr. Monteith, good.

"Q. You would consider it good? A. Yes, sir.

"Q. From your knowledge, and from the reputation he had, do you think he was the kind of person to get into this kind of difficulty?"

The Solicitor interposed an objection to this last ■ question and the Court sustained such. In so doing, we do not think the trial Judge committed error. It was proper for this witness to testify to the general reputation of the appellant but he could not express an opinion as to whether he was guilty of the crime with which he was charged. This exception is overruled.

The appellant asserts that the trial Judge committed ■ error in allowing the Solicitor to recall the prosecuting witness. When this witness first testified she described the attack made upon her by the appellant. She likewise identified the appellant as the one who had made such attack. After she had testified in chief she was cross examined by counsel for the appellant. Later in the trial the prosecuting witness was recalled to the witness stand to testify as to the length of time she was with the appellant. She fixed such period of time as approximately one hour and fifteen minutes. We do not think there was any error in permitting the State to recall this witness for further examination. In the case of *State v. Clyburn,* 16 S. C. 375, it appeared that after the

Solicitor had closed the case for the State and the first witness for the defense had been sworn and placed upon the stand, but before any question had been propounded to such witness, the Solicitor asked permission to recall a witness who had been previously examined for the purpose of proving a single fact which he had omitted to prove. The Court granted permission to reexamine the witness and the appellant asserted error. This Court in disposing of the exception, said:

"The conduct of a case in the Circuit Court, so far as relates to the time when testimony may be introduced, must be left to the discretion of the Circuit Judge, to be governed by the particular circumstances of each case. *Matthews v. Heyward,* 2 S. C. 247. Indeed the courts of this State have gone so far as to hold that a Circuit Judge may, in his discretion, permit a plaintiff to introduce other evidence even after a motion for a nonsuit has been made and argued. *Browning v. Huff,* 2 Bailey 179; *Poole v. Mitchell,* 1 Hill 404; and these cases have been recognized and followed by this court in the recent case of *Kairson v. Puckhaber,* 14 S. C. 627. So in *Colclough v. Rhodus,* 2 Rich. 78, it was held that a Circuit Judge might, in his discretion, permit a witness to return to the stand and testify after the case had been submitted to the jury and they had been addressed by counsel. It is true that these were civil cases, but the rules of evidence, with certain exceptions not applicable here, are the same in both civil and criminal cases. 1 Greenl. Evid. 65; *State v. Rawls,* 2 N. & McC. 331." See also *Petrie v. Columbia & Greenville R. Co.,* 27 S. C. 63, 2 S. E. 837, and *Hornsby v. South Carolina Ry. Co.,* 26 S. C. 187, 1 S. E. 594.

This exception is overruled

Appellant asserts that the trial Judge committed error in allowing the Solicitor to pit one witness against another for the purpose of impeachment. It is improper for the Solicitor, in the cross examination of the accused or a witness for him, to ask whether or not another

witness has told the truth, because to do such would force such witness to attack the veracity of the other witness. *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38, and *State v. Hariott et al.,* 210 S. C. 290, 42 S. E. (2d) 385.

A witness for the appellant had testified to his good reputation. On cross examination he was asked if he had heard the testimony of the prosecutrix and the appellant's confession. He answered this in the affirmative. He was then asked if after hearing this testimony and the confession, "Do you still say his character and reputation is good?" To which the witness answered, "I don't know, sir." Assuming this question to be improper, no prejudice resulted to the appellant in view of the answer made by the witness. In this connection we quote from *State v. Lyles,* 210 S. C. 87, 41 S. E. (2d) 625, 627, the following:

"Such cross examination is subject to the discretionary control of the trial Judge who should restrain its abuse. The cross examiner must be fair and act in good faith. The matters inquired about should not be merely chimerical, or drawn from the vivid imagination of opposing counsel, but the inquiry should be directed only to those matters concerning which the cross examiner has information warranting a reasonable belief on his part that the fact is as is implied by the question."

A review of the record does not show that the Solicitor asked any question of this witness for the purpose of embarrassing or humiliating him. The appellant had the right to offer character witnesses in his behalf, and in the exercise of this constitutional right, such witnesses should be protected from personal abuse and improper insinuations against their character. *State v. King,* 158 S. C. 251, 155 S. E. 409. A review of the record convinces us that at no time did the Solicitor abuse any of the witnesses offered by the appellant. We think this exception of the appellant is without merit.

The appellant alleges that the Court committed error in charging the jury that he was of one race and the prosecutrix of another. The charge of the trial Judge was as follows:

"I charge you further that because the defendant is of one race and the prosecuting witness is of another should not in any manner weigh either for or against him, one or the other. That is not an issue in the matter, and you are to give it no consideration whatsoever."

In connection with this exception we recur to the testimony of the prosecutrix where she said that after the appellant had stated his intention to have sexual intercourse with her, and "I told him that he couldn't mean that, and he said, 'Why? Because you are a white woman and I am a colored man,' ". In addition to this, it was perfectly apparent to the jury that the prosecutrix and the appellant were of different races. We think that the charge as made by the trial Judge was favorable to the appellant, and it was proper for the trial Judge to give this cautionary instruction to the jury. The case of *State v. Barwick,* 89 S. C. 153, 71 S. E. 838, 839, is in point on this question. We quote therefrom:

"One of the witnesses for the defense admitted that he may have said in a joking way, without meaning it, that the country was going to the devil if they would convict a white man for killing a negro. The court charged the jury. 'The law is applicable the same to every man. The law knows no pets. The law knows no difference between an Indian, Japanese, a citizen of the state, an African or a Caucasian. I could not charge you different law according to the parties interested, much less could you try the facts differently, the parties being of a different race, either Japanese, Chinese, African, or Caucasian. There is no color line in the law, and there shall be none under your oath in the jury box.'

"The appellant excepts to this charge as upon a matter not in issue, and as tending to divert the jury from the true consideration of his defense. We think the charge was not

only sound, but was proper in the circumstances and could not possibly have prejudiced any right of defendant."

In the case of *McLaurin v. Williams*, 175 N. C. 291, 95 S. E. 559, the North Carolina Supreme Court held that where a party to a litigation is white and the other is colored, it is not error for the Court to instruct that the jury should be fair and just and give a fair and impartial hearing regardless of the color of the litigants. See also *State v. Evans*, 177 N. C. 564, 98 S. E. 788.

The appellant complains that the trial Judge erred in allowing the introduction of his confession when the evidence showed that such was not freely and voluntarily given.

It is axiomatic that a confession is not admissible unless it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary, and there is no presumption of law that it was voluntary. The mere fact that a confession is made while the accused is in custody does not render it inadmissible. However, the conduct of the officer obtaining the confession will be rigidly scrutinized and the fact that it is made while the accused is under arrest is a circumstance, along with the other facts and circumstances to be taken into consideration by the jury in determining its voluntariness. *State v. Bullock*, 235 S. C. 356, 111 S. E. (2d) 657.

An examination of the record shows that the only evidence in this case was to the effect that the confession of the appellant was voluntary and that a copy of such confession was given to the appellant in conformity with Sections 1-64 and 26-7.1 of the 1958 Cumulative Supplement to the 1952 Code. All of the witnesses who were present when the appellant made his confession testified that the same was freely and voluntarily given, and that the appellant was not intimidated, abused or threatened in any manner. No evidence was offered in behalf of the appellant to the contrary. The trial Judge submitted to the jury, under an appropriate charge, the issue as to whether the confes-

sion of the appellant was voluntary or involuntary. We find no error on the part of the trial Judge in admitting into evidence the confession of the appellant.

When the Solicitor offered in evidence the confession of the appellant, his counsel objected to its admission, stating "We do not interpose that objection because of the manner in which the statement was taken, but because of some of the contents thereof." The objection was to the following question and answer:

"Q. Walter, we have had lots of complaints about a man prowling around homes at night in that community. Have you been going out without shoes and watching white women in their houses in that community before? A. No, sir."

The Solicitor agreed to delete the foregoing question and answer. Thereupon, this question and answer were physically removed from the confession by cutting it out of the confession and entirely removing it therefrom. After this had been done, counsel for the appellant objected to the admission of the confession on the ground that a portion of it had been deleted. The trial Judge admitted the confession without the deleted part. The appellant assigns error.

Ordinarily when a confession is admissible, the whole of what the accused said upon the subject at the time of the making of the confession is admissible and should be taken together. If the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time, which bears upon the subject of the controversy, including exculpatory or self serving declarations connected therewith. 20 Am. Jur., Evidence, Section 488, page 425. However, the appellant here objected to only the portion of his confession which the State agreed to delete. The remaining part of the confession related to the offense with which the appellant was charged. It has been held that when the parts of a conversation connected with a confession of crime charged can be separated from those re-

lating to other offenses, only those parts which are material to the crime charged should be received in evidence. *Com. v. Wilson,* 186 Pa. 1, 40 A. 283. *People v. Spencer,* 264 Ill. 124, 106 N. E. 219, 225. In the last cited case, it was said:

"The general rule is that a statement in the nature of an admission or confession, in order to be admissible, must relate to the offense in question. While the fact that such statement may include another offense as well as that charged does not prevent the confession being received and going to the jury with proper instructions when there can be no separation of the relevant from the irrelevant parts, when the relevant parts can be separated from the irrelevant, this must be done, and that part only of the confession admitted which is material to the issues on trial."

In the case of *State v. Fowler,* 230 N. C. 470, 53 S. E. (2d) 853, 856, the North Carolina Supreme Court said:

"* * * Moreover, the right of the confessor to have his confession considered as given, in its entirety, with whatever views or theories if affords, *State v. Jones,* 79 N. C. 630, may not extend to the prosecution, for if the part pertaining to the crime charged can be separated from the part relating to other offenses, only the part material to the inquiry should be received in evidence under the rule. * * *"

We do not have here a confession which is so interwoven with the challenged statement that the two cannot be separated without twisting or distorting the pertinent parts. Since the confession is in question and answer form, that part to which the appellant objected can be deleted from the record and the relevant part submitted to the jury. If, however, a proper separation could not have been made, it would have been proper for the trial Judge to submit the entire confession to the jury with appropriate instructions to disregard the irrelevant parts of the confession where a statement had been made with reference to other crimes. We do not think there was any error on the part of the trial Judge in admitting the confession of the

appellant with the above quoted portion deleted therefrom. Certainly, the confession as admitted was material to the crime charged against the appellant.

What we have heretofore said disposes of all questions raised by the appellant but in keeping with our invariable rule of *in favorem vitae* we have carefully examined the record for any errors affecting the substantial rights of the appellant, even though not made a ground of appeal. We find no error.

A review of the testimony in this case convinces us that the conviction of the appellant is clearly correct. The evidence leaves no doubt of the guilt of the accused. He had a fair trial and we are convinced that no other verdict could have been reasonably returned on the evidence other than the verdict reached in this case.

The judgment of the lower Court is affirmed.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.