19195

The STATE, Respondent, v. Boyce AVERY and
Lonnie Sales, Appellants

(180 S. E. (2d) 190)

*Messrs. John W. Williams, Jr.,* and *John W. McIntosh,* of Columbia, *for Appellants,*

*John W. Foard, Jr., Esq., Solicitor, for Respondent,*

March 29, 1971.

LEWIS, Justice.

There were two riots in October 1968 by inmates at the South Carolina Central Correctional Institution, one on October 1st and another on October 5th. The prosecutions in *State v. Greene et al.*, S. C., 180 S. E., (2d) 179, involved the first incident and the charges in this case arose out of the second. The appellants, with six others, were charged with rioting in violation of Section 55-7.2, Supplement to the 1962 Code of Laws. Four entered pleas of guilty at the beginning of the trial and one, who became ill, was not tried. The remaining three were tried, resulting in the conviction of two (the appellants) and the acquittal of one.

The issues presented may be disposed of under the following questions:

1. Was it error for the trial judge to refuse to quash the indictment on the ground that the statute under which the defendants were indicted was unconstitutionally vague?

2. Was it error for the trial judge to refuse appellant's motion for a severance?

3. Was it error for the trial judge to refuse to exclude from the courtroom those who had pleaded guilty?

4. Was it error to refuse to sentence before trial those defendants who pleaded guilty?

5. Did the trial judge err in his rulings with reference to objections made in several particulars to the cross-examination by the solicitor of the appellant Sales and defense witnesses?

6. Was it error for the trial judge to refuse to relieve the public defender from further representation of appellant Avery?

Appellants, first, charge error in the refusal of their motion to quash the indictment upon the ground that Section 55-7.2, *supra,* under which they were indicted, is unconstitutionally vague because it does not define the crime of riot. Riot is a common law offense in this

State and the definition of the crime, as adopted in *State v. Connolly*, 3 Rich. 337, has been consistently followed in our decisions. The contention that the definition of the offense is unconstitutionally vague is without merit. *Abernathy v. Conroy*, 4 Cir., 429 F. (2d) 1170.

It is next contended that the lower court erred in overruling a motion made by appellants for a severance and separate trials. From the record it appears that, when the case was called for trial, the trial judge directed that any and all motions on behalf of defendants would be considered as having been made at appropriate stages of the proceedings and overruled, which defendant's rights in regard to those motions preserved.

It is now agreed that appellants desire to move for a severance or separate trials. Such a motion was addressed to the sound discretion of the trial judge.

While the record affords sound basis for the criticism that the procedure adopted by the trial judge, of denying all motions and permitting them to be later inserted in the record, indicates a failure to give them the judicial consideration to which they were entitled, there is no showing of probable prejudice to appellants from the denial of the present motion. The charges arose out of the same uncomplicated facts and circumstances and there was no conflict in the defenses interposed. Indicative of the ability of the jury to keep the facts separate as to the participation of each of the defendants in the alleged riot is the fact that one of the defendants who went to trial was acquitted.

While eight defendants were charged in the same indictment, four pleaded guilty and one was not tried because of illness, leaving only three (appellants and one other) who were tried together. The entry of a plea by four of the defendants and the continuance of the case against another amounted to a severance of their trial from that of appellants. *State v. Williams*, 166 S. C. 63, 164 S. E. 415.

The denial of the motion for a severance resulted in no probable legal prejudice to appellants.

Error is also charged in the refusal of the trial judge to exclude from the courtroom the defendants who had entered guilty pleas. The four defendants who pleaded guilty at the outset of the trial remained in the courtroom throughout the trial of the appellants.

The alleged riot occurred among prison inmates. Those charged and many of the witnesses who testified were serving long prison terms. Of necessity, and it is not contended otherwise, more than normal security measures had to be taken in and about the courtroom during the trial. Appellants urge, in effect, that the continued presence in the courtroom of the four defendants who pleaded guilty increased the size of the security force required at the trial and resulted in such a prejudicial impact upon the jury as to destroy the presumption of innocence to which they were entitled, precluding them from receiving a fair and impartial trial.

It is true that the defendants who entered guilty pleas were not on trial and did not testify, but they were more than mere spectators. They were participants in the riot and the identity of those participating was one of the main questions to be decided. The identification by the witnesses of those allegedly participating and the presence in the courtroom of the participants for that purpose was justified.

There is no contention that more security measures were taken during the trial than necessary or proper, if the continued presence in the courtroom of those who pleaded guilty was justified.

The record discloses no fact or circumstances to show that the size of the security force maintained about the courtroom deprived appellants of the benefit of the presumption of innocence or in any other way precluded them from receiving a fair and impartial trial. It did not deprive appellants' codefendant of the benefit of the presumption of innocence

and no explanation is offered as to why appellants' rights would have been so prejudicially affected and not those of their codefendant who was acquitted by the same jury.

Four of those jointly indicated with appellants pleaded guilty at the outset of the trial, but were not sentenced until after the trial of appellants was completed. It is now claimed that the delay in sentencing the four who entered guilty pleas denied appellants the right of compulsory process for obtaining these witnesses to testify in their favor as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. This is so, it is argued, because the delay in sentencing inevitably created in the minds of those who had pleaded guilty a belief that they would receive a lenient sentence if they cooperated with the State by failing to testify for appellants. It is contended that the claimed State-induced reluctance to testify deprived appellants of the right to call their codefendants as witnesses in their behalf.

The codefendants who entered guilty pleas were not called as witnesses either by the State or defense. There is no showing that they were promised or expected leniency because of their plea. Neither is there any showing that they were reluctant or refused to testify for appellants. Assuming however that they expected leniency, the hope or expectation of a reduced sentence could only affect the weight of their testimony, not its admissibility. 23 C. J. S. Criminal Law § 805. The codefendants were present in the courtroom throughout the trial, were at all times available as witnesses, and competent to testify for either the State or the defense. Appellants had the available right to call them as witnesses, if they had elected to do so.

The present record is bare of any proof to support the claim that the delayed sentences would have in any way affected the nature of the testimony of the codefendants. In fact, the testimony shows that there was an unwritten rule among the prison inmates that one would not "rat" on the others, from which it is inferable that, if appellants had

called their codefendants, who were fellow prison inmates, they would have testified in their favor or, at least, would not have testified against them.

The contention that appellants were deprived of the constitutional right of compulsory process for obtaining witnesses is unsupported in the law or the facts.

Neither is there any merit in the exceptions which allege that the trial judge erred in his rulings on the objections made to the cross examination by the solicitor of the appellant Sales and some of the defense witnesses. In general, the contention is that the trial judge allowed the solicitor to ask (1) questions concerning convictions of appellants for crimes not involving moral turpitude, and (2) questions which were argumentative and repetitious. It is argued that the cumulative effect of the challenged questions, when taken in the context of the whole trial, entitles appellants to a new trial.

We find it unnecessary to review in detail the several objections made and the rulings thereon. In practically all instances the trial judge sustained objections to the testimony in question, and the record simply fails to show the prejudicially repetitious and argumentative questions as claimed by appellant.

The final question concerns the refusal of the trial judge to relieve the public defender from representation of appellant Avery. It appears that during the third day of the trial some disagreement arose between the public defender and Avery as to the witnesses to be called in the latter's behalf, resulting in a request to the court by the public defender that he be relieved of the duty of further representing Avery. The matter was inquired into by the court and the request was refused.

The question of whether counsel should have been relieved of further representation of his client was a matter addressed to the discretion of the trial judge, and only in case of an abuse of such discretion will this court interfere.

The trial judge properly exercised his discretion in this case. The record abundantly attests to the vigorous and competent representation of appellant by the public defender both before and after the request that he be discharged.

All exceptions are overruled and the judgment is accordingly,

Affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, Justice (concurring).

While some of the questions involved here are quite similar to some of the questions involved in *State v. Greene et al.,* S. C. 180 S. E. (2d) 179, I am convinced that there was no real prejudice to the defendants in the instant case and accordingly concur in the majority opinion.

While, as pointed out in my dissent in Greene, it is error for a trial judge to refuse to exercise his discretion with respect to a motion properly addressed to and within his sound discretion, where a particular disposition of a motion is required as a matter of law, then no error can be predicated upon a failure to exercise discretion. In the instant case, in my view, neither the record nor the briefs disclose any facts which would have warranted the trial judge exercising his discretion in favor of a severance. It might be mentioned that only three people were being tried together and the offense for which they were indicted required the participation of three or more people. There being no alleged facts which would call into play the exercise of the discretion of the trial judge, it would follow that his failure to hear and consider the motion, even though concededly improper, was nonprejudicial.

Objections made in the course of the cross-examination of the appellant Sales and some of the defense witnesses are quite similar to some of the objections made in Greene. The rulings of the trial judge thereabout in the instant case

were, however, quite different from the rulings in the Greene case, and here I am satisfied that His Honor by his rulings cured matters which otherwise might well have constituted prejudicial error.