19194

The STATE, Respondent, v. Edward GREENE, Fred Painter, Tommy Myers, Frank Downing, Derrill Brown and Ronald Floyd, Appellants.

(180 S. E. (2d) 179)

550

*Messrs. Kermit S. King, John W. Williams, Jr.,* and *John W. McIntosh,* of Columbia, *for Appellants,*

*John W. Foard, Jr., Esq., Solicitor,* of Columbia, *for Respondent,*

March 29, 1971.

LITTLEJOHN, Justice.

On October 1, 1968, at the South Carolina Central Correctional Institution, a riot by prisoners occurred, resulting in more than $50,000.00 property damages. Six guards and twelve prisoners were hospitalized as a result of the turmoil, which lasted about four or five hours. The appellants are six of twelve inmates brought to trial on December 9, 1968, charged with rioting in violation of Code section 55-7.2, and charged with possession of weapons with which to facilitate an escape, in violation of Code section 55-6.

Four of the twelve defendants (all prisoners) entered guilty pleas at the beginning of the trial; two others pled guilty during the course of the trial. The jury convicted all of the six appellants of rioting, and all, except Downing, of possession of weapons with which to facilitate an escape.

(On October 5, 1968 a similar riot took place. In another trial four pled guilty; two were convicted and one was acquitted. That case was also appealed, and inasmuch as kindred issues were raised, reference is made to the case of *State v. Avery, et al.,* 180 S. E. (2d) 190, filed in this court.)

The trial lasted five days. The testimony of twenty-eight witnesses, many of whom were prisoners, was submitted to the jury. For security reasons many law enforcement officials, plainclothed and in uniform, armed and unarmed, were in and about the courtroom.

John W. Williams, public defender, represented Greene, Painter, Myers and Floyd. Kermit King was appointed to represent Brown, and T. Burney Kinard, Jr. was appointed to represent Downing.

This appeal raises no issue of the sufficiency of the evidence to carry the case to the jury. There is no question but

that a riot occurred. It is the position of the defendants that they did not participate, and alibi witnesses were presented to the court, who, if believed, might have exonerated them. On the other hand, there was testimony that each of the defendants did participate, and obviously the jury believed this evidence.

The agreed statement of the case contains the following matter:

"When the case was called for trial, His Honor directed that any and all motions on behalf of the defendants would be considered as having been made at appropriate stages of the proceedings and overruled and that the defendants' rights in regard to those motions would be preserved. For the convenience of the Court, those motions which would have been made at trial and which are pertinent on appeal are set forth below. They will be referred to in the exceptions and argument as though they were made at the appropriate stages of trial, with appropriate specificity and argument.

"(a)  Motion for continuance on behalf of defendants;

"(b)  Motion for a severance of defendants;

"(c)  Motion to quash the Indictment because of the unconstitutional vagueness of the statute upon which it was based;

"(d)  Motion that guilty pleaders be sentenced before continuance of trial;

"(e)  Motion that guilty pleaders be excluded from the courthouse; and

"(f)  Motion for an arrest of judgment or, in the alternative, for a new trial."

In addition, the record reflects that the following occurred when the case was called for trial.

"Mr. Williams: If Your Honor please, before we draw the Jury, I would like to make some motions—

"The Court: I'm going to let you make all the motions you want to and I'm going to mark them heard and then let you reduce them to writing and put them in the record. Note

every kind of motion that they want to make and mark them heard and overruled."

The motions were not reduced to writing and put in the record.

Motions for severance and continuance are both addressed to the sound discretion of the trial judge under the law of this State, and it is well settled that the exercise of such discretion will not be disturbed on appeal in the absence of a clear abuse thereof. *State v. Harvey*, 253 S. C. 328, 170 S. E. (2d) 657 (1969).

Appellants contend that "His Honor erred in refusing Defendant Brown's motion for a continuance, said error being that such refusal denied to Brown his right to a fair trial."

We must, of course, determine solely from the record before us whether the judge erred as a matter of law and if so, whether such error was prejudicial to the defendant, Brown. Error without prejudice is not a basis for granting a new trial. It should be noted that the other seven defendants indicted jointly did not seek a continuance. After the judge stated at the commencement of the trial that all motions would be considered as having been made at appropriate stages of the proceeding and overruled, and defendants' rights preserved, nothing else appears in the record which could possibly be interpreted as relating to a continuance until we read the last exception as follows:

"His Honor erred in overruling defense counsel's motion for an arrest of judgment and, in the alternative, *for a new trial*, said error being that during the trial judicial error in the treatment of motions, improper questioning by the Solicitor, improper comments by the Court, the Solicitor and witnesses, the admission of improper character evidence and the prevalence of a melodramatic atmosphere and other influences had combined to deprive the defendants of a fair trial." (Emphasis added.)

If a new trial was sought from the trial judge on basis of failure to continue, the grounds therefor do not appear in the record.

There is filed with this court an affidavit of Brown's counsel dated November 9, 1970 (23 months after the trial), which sets forth factually why Brown's counsel contends the case should have been continued. Normally this affidavit would not be considered as a part of the record, but inasmuch as it is referred to in the agreed statement we consider the same in fairness to counsel and to the defendant.

It does not appear elsewhere in the record proper, but it does appear in the affidavit that counsel was appointed for Brown by order signed November 27, 1968; the attorney did not receive notice of the appointment until November 29. The case was called for trial on Monday, December 9, 1968, and it is the basic contention of Brown that his attorney did not have time to get ready for trial. It is submitted that from the date notice was received, two weekends intervened, leaving in actuality only five workdays for preparation.

Obviously, any motion for a continuance should be considered on the merits before a trial commences. It is difficult to determine just what motions the judge had in mind when he marked them heard at the beginning of the trial of the case. State's counsel argues that he did not refer to motions for a continuance since the granting of such would have postponed the trial.

There is, however, in the attorney's affidavit something significant which we quote:

"3. That affiant, in chambers, called to the attention of the Presiding Judge his intention to make numerous motions and that a motion for continuance was among them; and the Presiding Judge indicated that he would not hear any motions but would, instead, consider all motions as made, heard and overruled; and that a statement by the Presiding Judge to this effect appears in the Transcript of the trial; and that

it was, at the time of the trial, affiant's belief that it was not necessary to make any motions at that time, since all motions could be supplied to the record later, except such motions as the unanticipated exigencies of the situation might require."

We consider the affidavit made twenty-three months after the trial the same as if it had been filed before the commencement of the trial, and the same as though it was overruled as a matter of discretion to determine if the showing was arguably sufficient to have justified a continuance, and to determine if the rights of Brown have been prejudiced by the fact that the trial judge ordered the case to proceed. Failure to consider a motion for a continuance, if made prior to the trial of the case, is, of course, error, but such would not entitle an accused person to a new trial unless the same is prejudicial. The basic question is, of course: did the defendant, Brown, receive a fair trial?

The essence of the affidavit is that counsel had not had time to talk with his client and to interview prospective witnesses or to confer with counsel for other defendants, and had not received a reply to his letter addressed to the warden asking about Brown's prison record.

The following from our case of *State v. Motley*, 251 S. C. 568, 164 S. E. (2d) 569 (1968), is equally applicable here:

"The motion of the appellant for a continuance does not show how the refusal thereof was prejudicial to him. The appellant does not point to any specific testimony or other evidence that he could have produced had his motion been granted."

We cannot say as a matter of law that the showing made necessitated a continuance of the case, nor can we say that the rights of Brown have been prejudiced. A reading of the record reveals that Mr. King represented Brown well under difficult circumstances. He was not entitled to a perfect trial, only a fair one.

In the light of the fact that two riots had occurred it is understandable that the solicitor, acting for the state, felt

compelled to give the case prompt attention. The trial lasted five days. Four alibi witnesses testified for Brown and averred that he was not at the place State's witnesses swore him to be. Brown himself did not testify. Other prisoners and/or guards who might have been at or about the scene of the riot were readily available to testify and might have been subpoenaed on short notice if it developed as the trial proceeded that their testimony was potentially helpful.

A fair trial must be assured each defendant in all events. At the same time, in determining whether or not a trial must go forward, consideration must be given to the fact that this proceeding involved twelve accused persons and many witnesses and many security officers necessary to the orderly presentation and processing of the case. A continuance for one joint defendant makes a continuance for all necessary.

Appellant has not demonstrated on this appeal prejudicial error by reason of failure of the court to grant a continuance. In connection with this ruling we properly consider the rule cited in 22A C. J. S. Criminal Law, § 482 (1961) to the effect that normally a continuance as to jointly indicted defendants cannot be granted unless all join in the motion.

Failure of the court to grant the motion for a severance is not a basis for a new trial. There has been no demonstration of probable prejudice to appellants from the failure of the court to grant separate trials. The charges arose out of the same uncomplicated facts and circumstances, and there was no conflict in the defenses interposed. It is significant that the jury was able to keep the facts separate as to the participation of each of the six defendants. This is shown by the fact that one was exonerated of one of the charges while the other five were not. Each defendant was permitted to present alibi witnesses, and was, of course, permitted to testify if he chose to take the stand. The evidence was in conflict on the issue of whether each of the appealing

defendants participated in the riot. The issues were fairly presented to the jury, which obviously believed the State's witnesses.

There is no merit, we think, in appellants' contention that Code Section 55-7.2 is unconstitutionally vague in that it does not define the crime of "riot." The statute in question is directed at prisoners, but riot is a common law offense in this State and the meaning of the term is well established by judicial definition and, we think it fair to say, understood by the ordinary man. In *State v. Connolly*, 3 Rich. 337, 338 (1832), the court defined riot as follows:

"A riot is defined to be a tumultuous disturbance of the peace by three or more persons assembled together of their own authority, with the intent mutually to assist each other against anyone who shall oppose them, and putting their design into execution in a terrific and violent manner, whether the object was lawful or not." See also *State v. Johnson*, 43 S. C. 123, 20 S. E. 988 (1895).

In the fairly recent case of *Abernathy v. Conroy*, 429 F. (2d) 1170 (1970) CA 4, the court rejected a contention by Abernathy that the crime of riot as defined in South Carolina was unconstitutionally vague.

The contention that those six defendants who pled guilty should have been sentenced before the conduct of the trial is without merit. The codefendants who entered guilty pleas were not called as witnesses by either the State or the defense. There is no showing that they were assured leniency because of their plea, nor showing that they were reluctant to testify for the appellants. If it be assumed that they expected leniency such would not go to the admissibility of the evidence, but merely to its weight. Appellants had the right to call them as witnesses and have not been denied compulsory process as guaranteed by the sixth and fourteenth amendments of the Constitution of the United States. There is no showing in support of the claim that delayed sentences would have affected the nature of the testi-

mony of the defendants. We think there is much merit in the contention of the State that the judge should have the benefit of all the facts developed in the trial before sentencing those who pled guilty, as well as those who were convicted.

We find no error in failure of the judge to exclude from the courtroom the defendants who had entered guilty pleas. The alleged riot occurred among prison inmates. Those charged and many of the witnesses who testified were serving long prison terms. Of necessity, and it is not contended otherwise, more than normal security measures had to be taken in and about the courtroom during the trial. Appellants urge, in effect, that the continued presence in the courtroom of defendants who pleaded guilty increased the size of the security force required at the trial and resulted in such a prejudicial impact upon the jury as to destroy the presumption of innocence to which they were entitled, precluding them from receiving a fair and impartial trial.

It is true that the defendants who entered guilty pleas were not on trial and did not testify, but they were more than mere spectators. They were participants in the riot and the identity of those participating was one of the main questions to be decided. The identification by the witnesses of those allegedly participating and the presence in the courtroom of the participants for that purpose was justified.

There is no contention that more security measures were taken during the trial than necessary or proper, if the continued presence in the courtroom of those who pleaded guilty was justified.

The record discloses no fact or circumstance to show that the size of the security force maintained about the courtroom deprived appellants of the benefit of the presumption of innocence or in any other way precluded them from receiving a fair and impartial trial.

Other questions raised on appeal assert error on the part of the trial judge as relates to the admissibility of evidence, the asking of improper questions on the

part of the solicitor, and the failure of the trial judge to exclude certain testimony and caution the jury to disregard it. The conduct of the trial and the admission or exclusion of evidence is left largely to the discretion of the trial judge. In order to justify relief by way of a new trial it must be demonstrated not only that the trial judge committed error, but also that the error was prejudicial and denied to an accused person his right to a fair trial. Some of the evidentiary questions raised relate to all defendants, while others, if meritorious, would warrant relief to only one of the defendants.

In determining evidence which should be admitted or excluded the court must, of course, take into consideration the nature of the charge as well as the setting in which the alleged violations of the law took place.

Section 55-7.2 can be violated only by inmates of a prison. That statute reads as follows:

"Any inmate of the Department of Corrections, city or county jail, or public works of any county that conspires with any other inmate to incite such inmate to riot or commit any other acts of violence shall be deemed guilty of a felony and upon conviction shall be sentenced in the discretion of the court."

As indicated above in the definition of the word "riot" there is involved the conduct of three or more persons intending to do various improper things in a violent manner.

It is submitted that the trial judge erred in failing to grant a mistrial because the solicitor commented that more charges could have been lodged against the appellants. Such statement of the solicitor and the ruling of the judge must be considered in the light of what was said just before the solicitor's comment. Correction Officer Gardner had just testified that inmate Sturkie was beaten. Mr. Williams, of defense counsel, objected to "testimony on assault of anyone else." It was the contention of Mr. Williams that the assault charge merged into the riot charge. Solicitor

Foard stated "I didn't put all the charges in that I could, but under the rioting. * * *" It was obviously the intent of the solicitor to submit to the judge the proposition that various acts of improper conduct and other offenses go to make up a riot, and to argue that the State can prove various offenses in making a riot charge. Normally, State's counsel should not refer to other cases which could be prosecuted against an accused person, but when viewed in the overall trial, and when one considers the nature of the offense, there was no error.

Appellant argues that the trial judge erroneously admitted evidence of a violent assault by Robert Pinson, an inmate who had pled guilty and was not on trial. One of the things which the State had to prove was that a riot took place. Pinson's activities were a part of the riot. There is evidence that Pinson, along with Floyd and Myers who were on trial, were acting together. It was not improper to refer to Pinson and his activities when describing the conduct of those who participated in the affray.

Error is alleged on the part of the trial judge in failing to instruct the jury to disregard a statement by State's witness, Gardner. The following is taken from the transcript at a time when the solicitor was attempting to have the witness identify various accused persons:

"Q. Now, what about Floyd?

"A. He's been in and out of trouble too.

"Q. Did you know him by name?

"Mr. Williams: Excuse me. This is highly irregular.

"A. You asked how I knew him and that's how I knew him."

Counsel did not assert an objection or ask for a mistrial or state any grounds, or ask the trial judge to take any particular action. He merley commented that it was highly irregular. We cannot say that a ruling was required.

Defendant Painter alone contends he should be given a new trial because of reference by the solicitor to narcotics and his possible addiction.

After Painter had taken the stand and testified in his own behalf the solicitor cross examined him. On direct testimony he had been introduced to the jury through several questions by his own attorney. He testified that he was serving time for the crime of armed robbery and had been sentenced several months previously to "25 years, 15 suspended, 5 year probation on the service of 10 years, no parole." The record reflects the solicitor's cross examination as follows:

"Q. You have been addicted to narcotics—

"Mr. Williams: If Your Honor please—

"Q. —for about ten years?

"Mr. Williams: I think the Solicitor knows that's highly irregular and it has no bearing on this case.

"The Court: Overruled. Let's see what he's going to develop.

"Q. You're a nervous type person, aren't you?

"A. At times, at certain periods I am.

"Q. I don't mean to reflect on you by these questions. I'm just trying to get your personality."

The solicitor asked no questions about any drug convictions. After defense counsel interposed an objection the question was abandoned and another line of questions pursued. The jury was not told whether he was a drug addict or not, and no request to the judge was made for an instruction to disregard the question. We find no error.

Defendant Painter also requests a new trial because the solicitor asked him "Isn't it true that ever since you've been down there you have felt that everybody was against you?" The State argues that such was permissible to show the personality makeup of the defendant and possibly a motive for the crime. Suffice it to say, the question and answer, if erroneous at all, is not prejudicial such as to warrant a new trial.

The defendant Myers, alone, excepts and charges error on the part of the trial judge in permitting the solicitor to question him about his disciplinary record

at the prison. On direct examination it was brought out that Myers was 21 years of age, a native of Winston-Salem, North Carolina, and a Marine stationed at Charleston, South Carolina. He was serving a sentence of 6 years for armed robbery. By other testimony he attempted to leave the impression that he was trying to better himself and was trying to make a good prison record so as to be released as soon as possible. On cross examination the solicitor brought out that such was not in fact truth, but on the other hand, he had during the previous June violated the rules by getting drunk and cursing an officer. In the light of the evidence such testimony was submitted to rebut, we cannot say that there was prejudicial error.

The defendant, Brown, alleges error because of the testimony of Warden Strickland relative to a good conduct rating. On cross examination the solicitor asked Warden Strickland: "Of course now, with everything that he has done, he wouldn't get this rating, would he?" To this counsel said "If Your Honor please, that remains to be seen." On this appeal counsel would interpret this remark as an objection and contends that failure to strike the answer elicited would constitute error and entitle Brown to a new trial. It is sufficient to say that the comment of counsel did not interpose an objection, and certainly did not state any grounds of objection.

Error is alleged in the solicitor's questioning of witness Roland who presented alibi testimony on behalf of the defendant Myers. It is contended that the solicitor questioned this witness improperly relative to a prior conviction of murder. Objection was interposed and the court instructed the solicitor to rephrase the question. This was done, and the error was accordingly corrected. Later on the witness said that he did not see two other prisoners beat an officer by the name of Kraft. The solicitor then said: "Then if you didn't see it you couldn't have been with him all day, could you?" Objection was interposed; the court ruled it

improper and instructed the jury to disregard it. Thereupon counsel moved for a mistrial, which the judge denied. We agree that a mistrial was not warranted.

On cross examination the solicitor asked several appellants if they knew any reason why certain State witnesses would have testified against them if the statements made were not true. The State was entitled to bring out the relationship between the witness and the defendant. Such is permitted within the discretion of the trial judge.

As the trial proceeded the solicitor asked those defendants who testified to identify participants in the disturbance. Counsel for defendants attempted to stipulate that no defendant could identify any participant. The solicitor refused to stipulate. The judge did not require him to stipulate, and we think the matter was entirely a question of discretion of the trial judge.

Witness Duck, a prisoner, gave alibi testimony on behalf of the defendant, Edward Greene. He admitted that he was serving 15 years for armed robbery, and that he had been guilty of larceny of an automobile in Florida. It was also brought out that he was also sentenced for escaping. It is now argued that the escape conviction was improperly brought to the attention of the jury. The State argued that timely objection was not made, and that when objection was made the line of questioning was discontinued. The evidence of all offenses was pursued obviously in an effort to discredit the witness. We do not think that mention of escape relative to one who is guilty of armed robbery and grand larceny was prejudicial.

The defendant Brown takes exception to the questions by the solicitor intimative of homosexual activity between Brown and his witnesses who gave alibi testimony. In each instance, as soon as objection was interposed, the solicitor withdrew the question. Objections now interposed to other questions were not raised at the trial and accordingly we find no error.

Lastly, appellants urge that the motion for arrest of judgment, or in the alternative, a new trial, should have been granted. The effect of argument on this issue is to urge that the errors heretofore set forth warrant relief. In effect, the motion parades all contentions of error before the court collectively as a basis for requesting a new trial.

The trial was an involved one due to the very nature of the crimes charged, and the site where the riot occurred. The record reveals that the State and the defendants were given ample opportunity to present evidence working to the end that both the State and the defendant would have a fair and impartial trial. There is nothing in the record which would justify the court granting a motion for an arrest of judgment or for a new trial. Having found no prejudicial error, we conclude that the judgment of the lower court should be

Affirmed.

Moss, C. J., and Lewis, J., concur.

Bussey and Brailsford, JJ., dissent.

Bussey, Justice (dissenting).

Being of the view that there was prejudicial error, I most respectfully dissent. The motions for continuance and for severance were addressed to the sound discretion of the trial judge, who, according to the statement of the case, overruled them without hearing them.

"An appeal to a judge's discretion is an appeal to his judicial conscience, and its valid exercise connotes direction by the reason and conscience of the judge to a just result, taking account of the law and the particular circumstances of the case, and precludes capricious or arbitrary action." 48 C. J. S. Judges § 44, p. 1008.

The refusal to exercise discretion is reversible error and there is soundly reasoned authority for the proposition that it is not proper, orderly procedure for an appellate court to

pass upon an issue addressed to the discretion of the lower court, unless it appears that such discretion has actually been exercised, the correct procedure being to remand. 5A C. J. S. Appeal and Error § 1585, p. 40. See also cases collected in West's Decennial Digest, Appeal and Error, —947.

Appellants were entitled to have the motions for continuance and severance fully heard by the trial judge and thereafter entitled to a timely disposition of the same in his sound judicial discretion. This they have not received, according to the record. The merits of these motions have been argued before us, but we should refrain from passing upon the merits. We cannot speculate as to what conclusions His Honor might have reached had he timely and fully heard the motions, let alone determine whether or not the conclusions which he might have reached would have constituted an abuse of discretion. The appellants simply did not receive the judicial consideration of the motions to which they were entitled. The right to have these motions heard was a substantial right, and, under the facts of this case, its denial was reversible error.

With respect to four of the appellants who took the stand, the solicitor endeavored to force them to directly attack the veracity of several State witnesses. Repeated objections to this line of questioning by the solicitor were repeatedly overruled by the trial judge. Typical of the questions asked by the solicitor of appellants are the following:

"Can you give this jury any reason why Mr. Thomas would name you as being one of them up there that morning tearing up that sign shop if you weren't there?"

"Could you tell this jury why he (Mr. Atkins) should identify you as one of the prisoners who went over the fence in the area where the crowbars and the hammers and other objects and hats were taken?"

Similar questions were pursued at length in an obvious effort to force the several appellants to attack the veracity of several officials of the Department of Corrections who testi-

fied for the State. The line of questioning pursued by the solicitor in this respect cannot be distinguished, I think, from the almost identical line of questioning pursued by the solicitor in *State v. Hariott,* 210 S. C. 290, 42 S. E. (2d) 385, which was held by this Court to be improper and prejudicial, convictions in the cited case being reversed solely on that ground. See also *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38; *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

Various other trial errors are asserted. While the conduct of a trial and the admission or exclusion of evidence have to be left largely to the discretion of the trial judge, a study of the record in the instant case convinces me that, over objection, the prosecution injected into the trial by statements, questions, innuendoes, and intimations, various matters which had no relevancy as to any issue in the case or as to the credibility of any witness. Some of the asserted errors relate to all defendants, while others do not. Some of the asserted errors, considered singly, raise only borderline questions. Collectively, however, they strongly indicate error sufficiently prejudicial to warrant a new trial, even if the appellants were not entitled to a new trial on other grounds.

No good purpose could be served by reviewing in detail what the record discloses. Statements and questions, however, dealt at length with prior records and conduct of the several appellants and their witnesses without any regard as to whether such had any relevance or bearing on credibility, or otherwise. One appellant was improperly accused of being a homosexual, and another of being a dope addict. While they were all convicts, the appellants were, nevertheless, entitled to a fair trial, and totally irrelevant matters which simply went to picture them and their witnesses as bad men had no proper place in the trial.

Being convinced that the appellants did not receive a fair trial, I would reverse the judgment below, and remand for a new trial as to all defendants.

BRAILSFORD, J., concurs.